UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

PATRICIA FOLEY,
a citizen and resident of North Carolina,

    Plaintiff,

vs.

CARNIVAL CORPORATION,
a Panamanian Corporation d/b/a
CARNIVAL CRUISE LINES,

    Defendant.
_____/

## COMPLAINT

Plaintiff, PATRICIA FOLEY, a citizen and resident of North Carolina, hereby sues Defendant CARNIVAL CORPORATION, a Panamanian Corporation with its principal place of business in Florida doing business as CARNIVAL CRUISE LINES ("Defendant CARNIVAL"), and alleges the following:

## JURISDICTION, VENUE AND PARTIES

1. This is an action for damages in excess of seventy-five thousand ($75,000.00) dollars, exclusive of interest and costs.

2. Plaintiff, PATRICIA FOLEY, is a resident and citizen of North Carolina, and is otherwise *sui juris*.

3. Defendant, CARNIVAL, is a Panamanian corporation with its principal place of business in Miami-Dade County, Florida. Defendant CARNIVAL is both a citizen of Panama and a citizen of Florida for purposes of determining subject matter jurisdiction over this action.

4. At all material times Defendant CARNIVAL CORPORATION, LLC was operating under the fictious name "CARNIVAL CRUISE LINES" ("CARNIVAL").

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332, based on diversity of citizenship. Plaintiff is a resident and citizen of North Carolina, while Defendant is a citizen of Panama and Florida. The damages and injuries suffered by Plaintiff, as alleged in Paragraph 17 below, support an award of damages in excess of $75,000.00, exclusive of interest and costs.

6. At all material times, Defendant CARNIVAL has conducted ongoing substantial and not isolated business activities in Miami-Dade County, Florida, in the Southern District of Florida, so that *in personam* jurisdiction over Defendant exists in the United States District Court for the Southern District of Florida.

7. At all material times, Defendant CARNIVAL was, and is, engaged in the business of operating maritime cruise vessels for paying passengers, including the Plaintiff.

8. In the operative ticket contract, Defendant CARNIVAL requires fare paying passengers such as the Plaintiff to bring any lawsuit against it arising out of injuries or events occurring on the cruise voyage in this federal judicial district, and venue is proper in this Court.

9. Venue is also proper because Defendant CARNIVAL's principal place of business is located within this judicial district.

10. Plaintiff has complied with all conditions precedent to bringing this action, including providing Defendant CARNIVAL with timely notice as required by the ticket contract.

**LIABILITY AND DAMAGE ALLEGATIONS COMMON TO ALL COUNTS**

11. At all material times, Defendant CARNIVAL was engaged in the business of operating maritime cruise vessels for fare paying passengers and for this purpose operated, among other vessels, the M/S "SUNSHINE."

12. On March 19, 2022, Plaintiff was a fare paying passenger aboard the M/S "SUNSHINE" and in that capacity was lawfully present aboard the vessel.

13. On March 19, 2022, Plaintiff exited a mid-ship elevator on Deck 9 (the Lido Deck) of the M/S "SUNSHINE" when she tripped and fell over an uneven and/or raised threshold or transition strip between a carpeted surface and a tile surface, which was situated in a manner that was not flush with the surrounding floor, causing Plaintiff to sustain significant injuries, including without limitation, to her left leg. The change of elevation from the carpet to the tile flooring was not known or obvious to Plaintiff at the time that she fell.

14. At all material times, a dangerous condition existed on Deck 9 of the SUNSHINE referenced in Paragraph 13 above, to wit: a floor surface with an uneven/unlevel floor transition from the carpet flooring to the tile flooring that did not provide adequate edge treatment for the change of elevation, which posed a tripping hazard for passengers walking over it, including Plaintiff.

15. The area on Deck 9 where Plaintiff tripped is a common elevator corridor aboard the M/S SUNSHINE, which provides passage to and from the ship's main pool deck and is therefore heavily trafficked by passengers and crew at all times of the cruise.

16. At all material times prior to March 19, 2022, Defendant CARNIVAL had actual and/or constructive notice of the propensity for trip and falls on raised thresholds or transition strips onboard the M/S SUNSHINE, including in areas of the deck where Plaintiff tripped and fell

from prior incidents, including, but not limited to, the following substantially similar incidents onboard the M/S SUNSHINE and her sister ships:

    a. On October 19, 2017, passenger C.N. was injured on the M/S TRIUMPH, when she tripped and fell on a threshold on the Lido Deck. *Nepost v. Carnival Corporation,* Case No. 1:18-cv-24966-KMW. CARNIVAL owns and operates the M/S TRIUMPH, recently renamed the M/S SUNRISE, which is a sister ship of the M/S SUNSHINE.

    b. On February 4, 2019, passenger D.C. was injured when she tripped over a protruding threshold on Deck 5 of the M/S TRIUMPH. *Caesar-Bishop v. Carnival Corp.*, Case No. 1:21-cv-20117-MGC.

    c. On October 15, 2019, passenger M.P. was injured when she tripped over a threshold that was not flush with the floor on Deck 9 of the M/S VICTORY (recently renamed the M/S SUNSHINE, the subject vessel herein). *Patton v. Carnival Corp.,* Case No. 1:22-cv-21158-RNS.

    d. On January 23, 2022, passenger M.D. was injured when she tripped over a raised threshold on Deck 10 of the M/S SUNSHINE. *Dunford v. Carnival Corp.*, Case No. 1:22-cv-22734-KMW.

    e. On March 10, 2022, passenger R.T. was injured when he tripped over a threshold abutting an uneven, carpeted portion of the floor of the M/S SUNSHINE. *Tuite v. Carnival Corp.*, Case No. 1:23-cv-20614-JAL.

17. As a direct and proximate result of the fall described in Paragraph 14, Plaintiff was injured in and about her body and extremities, including sustaining injuries to her left leg and suffered pain and suffering therefrom, and sustained mental anguish, disfigurement, disability,

aggravation or acceleration of preexisting conditions, and the inability to lead a normal life. Furthermore, she incurred medical, hospital, and other out of pocket and health care expenses in the past and future as a result of her injuries.  The future medical and health care expenses are reasonably certain to occur.  These damages are permanent or continuing in their nature and Plaintiff will continue to sustain and incur these damages in the future.

## **COUNT I – NEGLIGENT MAINTENANCE**

18. Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 17 above and further alleges the following matters.

19. At all material times, Defendant CARNIVAL owed Plaintiff, as a fare paying passenger, a duty of reasonable care for her safety, including a duty to maintain its vessel, including the floor surface in the area where Plaintiff tripped and fell, in a reasonably safe condition.

20. At all material times, the area where the Plaintiff fell was in a condition dangerous to passengers traversing the area, including the Plaintiff, due to the concealed change of elevation that caused a tripping hazard referenced in Paragraphs 13 and 14.

21. At all material times, Defendant CARNIVAL knew or should have known that the dangerous condition referenced in Paragraph 14 above on which Plaintiff tripped and fell posed a tripping hazard for passengers walking over it due to its condition, which was not flush with the surrounding floor, and the length of time the uneven surface had existed in a high-traffic area of the ship.

22. At all material times prior to Plaintiff's fall on March 19, 2022, Defendant also had actual and/or constructive notice of the dangerous condition described in Paragraph 14 as documented by substantially similar prior trip and fall incidents caused by uneven/unlevel

transitions between different flooring types on the M/S SUNSHINE and her sister ships, including those instances referenced in Paragraph 16.

23. Additionally, Defendant CARNIVAL knew or should have known of the following industry standards:

- ASTM F1637-13 - 5.2.3. Changes in levels up between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

- ASTM F1637-13 - 5.2.4. Changes in levels greater than ½ in (12 mm) shall be transitioned by means of a ramp or a stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

- NFPA, the Life Safety Code®, 7.1.6.2 Changes in Elevation. Abrupt changes in elevation of walking surfaces shall not exceed 1/4 in. (6.3 mm). Changes in elevation exceeding 1/4 in. (6.3 mm), but not exceeding 1/2 in. (13 mm), shall be beveled with a slope of 1 in 2. Changes in elevation exceeding 1/2 in. (13 mm) shall be considered a change in level and shall be subject to the requirements of 7.1.7.

24. CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject thresholds or transition strips, such that CARNIVAL should have known of the design defects of the subject area and thresholds/transition strips before providing them for public use. These design defects include, but are not limited to, the dangers outlined in Paragraph 14 above.

25. Notwithstanding Defendant's actual and/or constructive knowledge of the dangerous condition referenced in Paragraph 14 above, the Defendant failed before the time of the Plaintiff's fall to take reasonable measures to maintain the area in a reasonably safe manner. Defendant thereby failed to exercise reasonable care for the safety of its passengers, including the Plaintiff, and was thereby negligent.

26. The Defendant's specific negligent acts and/or omissions consist of one or more of the following:

a. Failing to include adequate edge treatment for the change of elevation between the floor surfaces in the area where Plaintiff fell;

b. Failing to maintain the area where Plaintiff tripped and fell in a reasonably safe condition so as to prevent trips and falls;

c. Failing to conduct frequent, timely, or adequate inspections of the floor surface in the area where Plaintiff fell to identify or detect potential tripping hazards such as uneven/unlevel transition from carpet to tile flooring on the Lido Deck;

d. Failing to have an adequate transition from carpet to tile flooring on the Lido Deck where Plaintiff fell, which resulted in significant injuries to Plaintiff;

e. Failing to inspect the area where Plaintiff tripped and fell for tripping hazards, including the tripping hazard described in Paragraphs 13 and 14 above;

f. Failing to staff and deploy a sufficient number of personnel to implement and enforce adequate policies and procedures to ensure that the floor surface in the area where Plaintiff tripped was free of tripping hazards;

g. Failing to adequately train its crewmembers to maintain the floor surface in the area where Plaintiff tripped, and adjacent areas, free of tripping hazards.

27. As a direct and proximate result of one or more of the Defendant's negligent acts and/or omissions as described above, Plaintiff tripped and fell as alleged in Paragraph 13 and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 17.

**WHEREFORE**, Plaintiff demands judgment against Defendant CARNIVAL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

GERSON & SCHWARTZ, P.A. • 1980 Coral Way • Miami, Florida 33145-2624
Dade (305) 371-6000 •Broward (954) 845-0535 • Fax (305) 371-5749 •Toll Free (877) 475-2905
www.injuryattorneyfla.com

## **COUNT II – NEGLIGENT FAILURE TO CORRECT**

28. Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 17 above and further alleges the following matters.

29. At all material times, Defendant owed Plaintiff, as a fare paying passenger, a duty of reasonable care for her safety, including a duty to correct dangerous conditions such as tripping hazards of which it knew or should have known about in the exercise of reasonable care.

30. At all material times, the area where the Plaintiff fell was in a condition dangerous to passengers traversing the area, including the Plaintiff, due to the concealed change of elevation that caused a tripping hazard referenced in Paragraphs 13 and 14.

31. At all material times, Defendant CARNIVAL knew or should have known that the dangerous condition referenced in Paragraph 14 above on which Plaintiff tripped and fell posed a tripping hazard for passengers walking over it due to its condition, which was not flush with the surrounding floor, and the length of time the uneven surface had existed in a high-traffic area of the ship.

32. At all material times prior to Plaintiff's fall on March 19, 2022, Defendant also had actual and/or constructive notice of the dangerous condition described in Paragraph 14 as documented by substantially similar prior trip and fall incidents caused by uneven/unlevel transitions between different flooring types on the M/S SUNSHINE and her sister ships, including those instances referenced in Paragraph 16.

33. Additionally, Defendant CARNIVAL knew or should have known of the following industry standards:

- ASTM F1637-13 - 5.2.3. Changes in levels up between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

- ASTM F1637-13 - 5.2.4. Changes in levels greater than ½ in (12 mm) shall be transitioned by means of a ramp or a stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

- NFPA, the Life Safety Code®, 7.1.6.2 Changes in Elevation. Abrupt changes in elevation of walking surfaces shall not exceed 1/4 in. (6.3 mm). Changes in elevation exceeding 1/4 in. (6.3 mm), but not exceeding 1/2 in. (13 mm), shall be beveled with a slope of 1 in 2. Changes in elevation exceeding 1/2 in. (13 mm) shall be considered a change in level and shall be subject to the requirements of 7.1.7.

34. CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject thresholds or transition strips, such that CARNIVAL should have known of the design defects of the subject area and thresholds/transition strips before providing them for public use. These design defects include, but are not limited to, the dangers outlined in Paragraph 14 above.

35. Notwithstanding Defendant's actual and/or constructive knowledge of the dangerous condition referenced in Paragraph 14 above, the Defendant failed before the time of the Plaintiff's fall to take reasonable measures to correct the dangerous condition. Defendant thereby failed to exercise reasonable care for the safety of its passengers, including the Plaintiff, and was thereby negligent.

36. The Defendant's specific negligent acts and/or omissions consist of one or more of the following:

   a. Failing to correct and/or ameliorate the tripping hazard described in Paragraphs 13 and 14 that existed on the Lido Deck where Plaintiff tripped and fell;

   b. Failing to inspect the area where Plaintiff tripped and fell for tripping hazards, including the tripping hazard described in Paragraphs 13 and 14;

    c. Failing to remove/eliminate the tripping hazard posed by the uneven floor described in Paragraphs 13 and 14 where passengers, such as Plaintiff, traverse.

37. As a direct and proximate result of one or more of the Defendant's negligent acts and/or omissions as described above, Plaintiff tripped and fell as alleged in Paragraph 13 and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 17.

**WHEREFORE**, Plaintiff demands judgment against Defendant CARNIVAL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

### COUNT III – NEGLIGENT FAILURE TO WARN

38. Plaintiff adopts, realleges and incorporates by reference all allegations of Paragraphs 1 through 17 above and further alleges the following matters.

39. At all material times, Defendant owed the Plaintiff, as a fare paying passenger, a duty to warn passengers of hazards of which it knew or should have known in the exercise of reasonable care that its passengers may reasonably be expected to encounter on the vessel.

40. At all material times, the area where the Plaintiff fell was in a condition dangerous to passengers traversing the area, including the Plaintiff, due to the concealed change of elevation that caused a tripping hazard referenced in Paragraphs 13 and 14.

41. At all material times, Defendant CARNIVAL knew or should have known that the dangerous condition referenced in Paragraph 14 above on which Plaintiff tripped and fell posed a tripping hazard for passengers walking over it due to its condition, which was not flush with the surrounding floor, and the length of time the uneven surface had existed in a high-traffic area of the ship.

42. At all material times prior to Plaintiff's fall on March 19, 2022, Defendant also had actual and/or constructive notice of the dangerous condition described in Paragraph 14 as documented by substantially similar prior trip and fall incidents caused by uneven/unlevel transitions between different flooring types on the M/S SUNSHINE and her sister ships, including those instances referenced in Paragraph 16.

43. Additionally, Defendant CARNIVAL knew or should have known of the following industry standards:

- ASTM F1637-13 - 5.2.3. Changes in levels up between ¼ and ½ in. (6 and 12 mm) shall be beveled with a slope no greater than 1:2 (rise:run).

- ASTM F1637-13 - 5.2.4. Changes in levels greater than ½ in (12 mm) shall be transitioned by means of a ramp or a stairway that complies with applicable building codes, regulations, standards, or ordinances, or all of these.

- NFPA, the Life Safety Code®, 7.1.6.2 Changes in Elevation. Abrupt changes in elevation of walking surfaces shall not exceed 1/4 in. (6.3 mm). Changes in elevation exceeding 1/4 in. (6.3 mm), but not exceeding 1/2 in. (13 mm), shall be beveled with a slope of 1 in 2. Changes in elevation exceeding 1/2 in. (13 mm) shall be considered a change in level and shall be subject to the requirements of 7.1.7.

44. CARNIVAL participated in the installation and/or design of the subject area, or alternatively, CARNIVAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject thresholds or transition strips, such that CARNIVAL should have known of the design defects of the subject area and thresholds/transition strips before providing them for public use. These design defects include, but are not limited to, the dangers outlined in Paragraph 14 above.

45. Notwithstanding Defendant's actual and/or constructive knowledge of the dangerous condition of the tripping hazard described in Paragraph 14 above, the Defendant failed before the time of the Plaintiff's fall to take reasonable measures to warn passengers, including the

Plaintiff, of the dangerous condition and thereby failed to exercise reasonable care for the safety of its passengers, including the Plaintiff, and was thereby negligent.

46. The Defendant's specific negligent acts and/or omissions consist of one or more of the following:

   a. Failing to warn and/or notify passengers of the tipping hazard described in Paragraphs 13 and 14 through written or orally delivered warnings.

   b. Failing to redirect passengers away from the dangerous condition pending the repair and/or replacement of the tripping hazard described in Paragraphs 13 and 14 above.

   c. Failing to warn and/or notify passengers of the tipping hazard described in Paragraphs 13 and 14 through appropriate markings or signage.

   d. Failing to cordon off the tripping hazard described in Paragraphs 13 and 14, or otherwise, before the Plaintiff fell and was injured.

47. As a direct and proximate result of one or more of the Defendant's negligent acts and/or omissions as described above, Plaintiff tripped and fell as alleged in Paragraph 13 and has thereby sustained and will continue in the future to sustain the damages alleged in Paragraph 17.

**WHEREFORE**, Plaintiff demands judgment against Defendant CARNIVAL for compensatory damages, interest and the costs of this action and further demands trial by jury of all issues so triable as of right.

### DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial by jury of all issues so triable as of right.

Dated: August 10, 2023

                                                     */s/Nicholas Gerson*

PHILIP M. GERSON
Florida Bar No. 127290
pgerson@gslawusa.com
NICHOLAS I. GERSON
Florida Bar No. 0020899
ngerson@gslawusa.com
EDWARD S. SCHWARTZ
Florida Bar No. 346721
eschwartz@gslawusa.com
DAVID L. MARKEL
Florida Bar No. 78306
dmarkel@gslawusa.com
SHANNON CROSBY
Florida Bar No. 1010207
scrosby@gslawusa.com
BRANDON P. VOLK
Florida Bar No. 1019012
bvolk@gslawusa.com
GERSON & SCHWARTZ, P.A.
1980 Coral Way
Miami, Florida 33145
Telephone:     (305) 371-6000
Facsimile:      (305) 371-5749
*Attorneys for Plaintiff*